Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★ ★ ★ ★ ★



## OPINION

No. 04-10-00121-CV

Gene R. **ROSAS**,
Appellant

v.

**COMMISSION FOR LAWYER DISCIPLINE**,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-03745
Honorable Brenda Kennedy, Judge Presiding[1]

Opinion by:   Catherine Stone, Chief Justice

Sitting:      Catherine Stone, Chief Justice
              Sandee Bryan Marion, Justice
              Steven C. Hilbig, Justice

Delivered and Filed:  November 10, 2010

AFFIRMED

Gene Rosas appeals a judgment disbarring him from the practice of law.  We affirm the trial court's judgment.

### BACKGROUND

Rosas was licensed to practice law in Texas.  As part of his legal practice, Rosas provided legal assistance to homeowners facing bank foreclosure.  Mark Mallery is a real estate

---

[1] Sitting by assignment.

salesperson in California. Mallery's real estate experience includes holding open houses, showing properties, and drafting letters of intent. Mallery testified, however, that he is unfamiliar with the legal aspects of real estate transactions.

Mallery purchased an investment property in San Antonio, Texas, but fell behind on his mortgage payments. Mallery's lender chose to foreclose on the property and scheduled a foreclosure sale for August 7, 2007. Rosas learned about Mallery's situation and sent Mallery a letter offering to help him avoid foreclosure. Rosas's letter outlined several options for Mallery, which persuaded Mallery to contact Rosas's office on the day of his foreclosure sale.

Mallery asked for Rosas's assistance in saving his property from foreclosure. During the course of his conversation with Rosas's legal assistant, Mallery offered to convey his property to Rosas. Rosas's legal assistant relayed the information to Rosas, who immediately filed a petition for temporary restraining order and application for an injunction on Mallery's behalf.[2] The trial court granted Mallery temporary relief and scheduled an injunction hearing for August 21, 2007.[3]

Several days later, on or about August 9, 2007, Rosas spoke to Mallery about transferring his Texas investment property over to him. Mallery indicated to Rosas that Rosas needed to pay him $5,000 in order for the conveyance to occur. Rosas agreed to Mallery's monetary request and, on September 22, 2007, forwarded to Mallery the transfer documents for his approval. Mallery executed a warranty deed supplied by Rosas on September 26, 2007 and returned all of

---

[2] The petition Rosas filed in district court was styled *Mark A. Mallery v. Litton Loan Servicing L.P., Its Assigns, Successors, and Predecessors in Interest*.

[3] The injunction hearing scheduled for August 21, 2007 did not occur.

the documents to him. Rosas neither discussed the details of the property transfer with Mallery nor verified that Mallery understood the documents he was signing. [4]

In the interim, Mallery's investment property was once again scheduled for a foreclosure sale to occur on October 2, 2007. On October 1, 2007, Rosas filed a second petition for temporary restraining order and application for injunction in the district court. Like the prior temporary restraining order and application for injunction, Rosas identified Mallery as the plaintiff in the proceedings. The petition states "Defendant has placed Plaintiff's property for foreclosure" and notes "Plaintiff has obtained a buyer for the property and requires time to close the transaction." The district court granted the relief requested by Rosas and set an injunction hearing for October 16, 2007. This injunction hearing did not occur, and Rosas recorded the warranty deed signed by Mallery on November 26, 2007.[5]

After Rosas did not pay Mallery in accordance with the terms of their agreement, Mallery filed a grievance against Rosas with the State Bar of Texas. Mallery complained he had hired Rosas to save him from foreclosure and that Rosas had "stolen" his house. Rosas responded to the grievance on August 4, 2008. In his response, Rosas confirmed that he agreed to represent Mallery in the foreclosure proceedings on August 7, 2007 and that he and Mallery subsequently entered into a business transaction whereby Rosas's company acquired title to Mallery's property. Rosas confirmed he had failed to pay Mallery and noted that individuals were residing in the home.

---

[4] Mallery was conveying his property to Rosas's property holding company, ASGR Property Holdings. The transfer documents provided that ASGR would take ownership of Mallery's property, while Mallery would remain financially responsible for the property's mortgage payments. Mallery purportedly did not understand the effect of the documents he signed and did not realize he would remain financially responsible for the property's mortgage payments. According to Mallery, he executed the documents because he trusted Rosas and believed that Rosas was acting to further his interests. The record shows Mallery made no changes to the documents provided by Rosas except for altering the due date on the promissory note.

[5] The Texas investment property was scheduled for foreclosure three additional times, but was never foreclosed upon by the bank.

On March 4, 2009, the Commission for Lawyer Discipline (the "Commission") initiated a disciplinary action against Rosas for violation of the Texas Disciplinary Rules of Professional Conduct. The Commission alleged Rosas violated Disciplinary Rule 1.08(a) by entering into a business transaction with a client wherein: (1) the transaction and terms on which Rosas acquired the property were not fair and reasonable to the client and were not fully disclosed in a manner that could be reasonably understood by the client; (2) the client was not given a reasonable opportunity to seek the advice of independent counsel in the transaction; and (3) the client did not consent in writing. The Commission also alleged Rosas violated Disciplinary Rule 8.04(a)(3) by engaging in conduct that involved dishonesty, deceit, or misrepresentation. Rosas elected to have the complaint proceed in district court and denied the allegations raised by the Commission. While the disciplinary proceeding was pending, Rosas and Mallery entered into a settlement agreement on June 27, 2009, resolving their dispute over the unpaid $5,000 promissory note.

After a bench trial, the trial court found Rosas committed misconduct in violation of Disciplinary Rules 1.08(a) and 8.04(a)(3). *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.08(a), 8.04(a)(3) *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2005). The trial court did not file findings of fact and conclusions of law in support of the judgment. As a sanction, the trial court disbarred Rosas and ordered him to pay the State Bar of Texas $9,250 in attorney's fees. This appeal followed.

### DISCIPLINARY RULE OF PROFESSIONAL CONDUCT 1.08

**A. Sufficiency of the Evidence**

In his first issue, Rosas alleges he is not guilty of violating Texas Disciplinary Rule of Professional Conduct 1.08(a) because there is no evidence demonstrating an attorney-client

relationship existed between he and Mallery at the time of their business transaction. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.08(a) (prohibiting a lawyer from entering into a business transaction with a client). We review challenges to the legal sufficiency of the evidence in a bench trial under the same standard used in reviewing the sufficiency of the evidence in a jury trial. *K.C. Roofing Co., Inc. v. Abundis*, 940 S.W.2d 375, 377 (Tex. App.—San Antonio 1997, writ denied). When reviewing a legal sufficiency or "no evidence" challenge, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If "the appellant is challenging the legal sufficiency of the evidence to support a finding on which [he] did not have the burden of proof at trial, the appellant must demonstrate on appeal that no evidence exists to support the adverse finding." *Bellino v. Comm'n for Lawyer Discipline*, 124 S.W.3d 380, 385 (Tex. App.—Dallas 2003, pet. denied). We sustain a legal sufficiency or "no evidence" challenge when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). In any sufficiency review, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *City of Keller*, 168 S.W.3d at 819. Because this was a bench trial without findings of fact and conclusions of law, all facts necessary to support the judgment are implied. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

Disciplinary Rule 1.08 provides:

(a) A lawyer shall not enter into a business transaction with a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.08(a). In order to find a violation of Disciplinary Rule 1.08(a), the trial court first had to find an attorney-client relationship existed at the time of the business transaction. An attorney-client relationship is a contractual relationship whereby an attorney agrees to render professional services for a client. *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 254 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The attorney-client relationship may be either express or implied from the conduct of the parties. *Burnap v. Linnartz*, 914 S.W.2d 142, 148 (Tex. App.—San Antonio 1995, writ denied); *Yaklin v. Glusing, Sharpe & Krueger*, 875 S.W.2d 380, 383 (Tex. App.—Corpus Christi 1994, no writ). The parties must manifest an intention to create an attorney-client relationship. *Parker v. Carnahan*, 772 S.W.2d 151, 156 (Tex. App.—Texarkana 1989, writ denied). "An attorney's appearance in a judicial or semi-judicial proceeding creates a presumption that an attorney-client relationship exists between the attorney and the person with whom he appears." *E.F. Hutton & Co. v. Brown*, 305 F.Supp. 371, 387 (S.D. Tex. 1969). The attorney-client relationship generally ends once the purpose of the employment is completed unless there is a special agreement to the contrary. *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 836 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

Rosas claims there is no evidence to support a finding of a prohibited business transaction because any attorney-client relationship that existed between he and Mallery ended well before their business transaction. According to Rosas, his attorney-client relationship with Mallery

began and ended on August 7, 2007, the date when Mallery sought his assistance and Rosas secured a temporary restraining order to stop the foreclosure sale. Because he and Mallery did not engage in their business transaction until September 2007, Rosas alleges the trial court had no basis to find he violated Disciplinary Rule 1.08(a). We disagree with Rosas's contention.

The record in this case shows Rosas sent Mallery a letter offering legal assistance in connection with the August 7, 2007 foreclosure sale. Mallery responded to Rosas's letter on August 7, 2007, and asked Rosas to stop the bank from foreclosing on his property to protect his credit. Rosas immediately filed a petition for temporary restraining order and application for an injunction on Mallery's behalf. The trial court granted Mallery temporary relief and scheduled an injunction hearing for August 21, 2007. We note that the August 7 temporary restraining order secured by Rosas, by its very nature, implied that Rosas would perform additional acts to protect Mallery. In fact, he did. Subsequent to the business transaction in question by which Mallery transferred his Texas investment property to Rosas, Mallery's property was again scheduled for a foreclosure sale. On October 1, 2007, less than a week after the business transaction, Rosas filed a second petition for temporary restraining order and application for injunction in the district court. Like the prior petition, Rosas identified Mallery as the plaintiff in the proceedings. The district court granted the requested relief and set an injunction hearing for October 16, 2007. In light of this evidence, we believe there is ample evidence in the record demonstrating that an attorney-client relationship existed between Rosas and Mallery at the time of their September 2007 business transaction. *See E.F. Hutton & Co.*, 305 F.Supp. at 387. Rosas's first issue is overruled.

## B. Failure to Properly Consider the Evidence

In his third issue, Rosas argues the trial court erred by not giving sufficient weight to the language contained within his and Mallery's June 2009 settlement agreement when it assessed whether he had violated Disciplinary Rule 1.08(a). This complaint centers upon language from the settlement agreement stating: "Mallery and Rosas entered into a business deal whereby Rosas agreed to refinance and obtain a purchaser for a residence owned by Mallery on which he was in default in payment of the Note. Rosas did not act as an attorney."

In his brief, Rosas explains "[t]he essence of the Settlement Agreement is that . . . Mallery entered into a business transaction conveying the Texas investment property to ASGR Property Holdings, LLC, where . . . Rosas did not act as his attorney." He claims the settlement language thus "negates any violation of Texas Disciplinary Rule of Professional Conduct 1.08(a)." However, the issue at hand concerns whether Rosas committed a disciplinary rule violation for failing to properly admonish Mallery about engaging in a business transaction with him while they still had an ongoing attorney-client relationship — not whether Rosas committed a disciplinary violation because he represented Mallery in connection with the conveyance of "the Texas investment property to ASGR Property Holdings, LLC." Because the self-serving settlement language relied upon by Rosas addresses this latter issue, it was clearly within the trial court's discretion to give little, if any, weight to such language when it assessed whether Rosas violated Disciplinary Rule 1.08(a). *See Santos v. Comm'n for Lawyer Discipline*, 140 S.W.3d 397, 405 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (recognizing the trier of fact is the sole judge of the weight and credibility of the evidence). Rosas's third issue is overruled.

## C. **Affirmative Defense**

In his fifth issue, Rosas contends the trial court erred in disregarding his defense to the Commission's allegations. According to Rosas, his and Mallery's transaction falls within one of the exceptions to the rule prohibiting business dealings between a lawyer and his client. As previously noted, Disciplinary Rule 1.08 provides:

(a) A lawyer shall not enter into a business transaction with a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.08 (a). "Paragraph (a) does not, however, apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others such as banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities services." TEX. DISCIPLINARY RULES PROF'L CONDUCT R, 1.08 cmt. 2. A lawyer has no advantage in dealing with the client in such transactions, and the restrictions in paragraph (a) are unnecessary and impracticable. *Id.* Rosas argues he and Mallery engaged in a commercial transaction for products or services that Mallery generally markets to others; therefore, Rosas contends the trial court should have found the underlying business transaction exempted from Disciplinary Rule 1.08(a).

Rosas's assertion that his and Mallery's transaction is exempted from Disciplinary Rule 1.08(a) is a matter constituting an avoidance or affirmative defense to the Commission's claim of professional misconduct. *See Rodgers v. Comm'n for Lawyer Discipline*, 151 S.W.3d 602, 615-

16 (Tex. App.—Fort Worth 2004, pet. denied) (concluding attorney's argument that he was not required to submit his advertisement for review because it fit one of the exceptions to Disciplinary Rule 7.07(b) constituted an affirmative defense); *State Bar of Tex. v. Dolenz*, 3 S.W.3d 260, 267 (Tex. App.—Dallas 1999, no pet.) (concluding attorney's assertion that the client had consented after full disclosure was a matter constituting an avoidance or affirmative defense to the allegation that he had entered into an improper business relationship with his client); *see generally Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 212 (Tex. 1996) (explaining "[a]n affirmative defense does not seek to defend by merely denying the plaintiff's claims, but rather seeks to establish 'an independent reason why the plaintiff should not recover.'"). Consequently, Rosas had the burden to prove his and Mallery's transaction is exempted from Disciplinary Rule 1.08(a). *See Rodgers*, 151 S.W.3d at 616.

Turning to the record, we do not believe Rosas satisfied his burden regarding his affirmative defense. Rosas points to no evidence demonstrating he and Mallery were on equal footing in connection with the underlying transaction. Mallery testified his real estate knowledge and experience is limited to showing properties to potential buyers, collecting checks, and preparing one-page letters of intent. He stated he has no knowledge or experience relating to the legal aspects of real estate transactions, including matters pertaining to contracts and deeds. The trial court was free to judge Mallery's credibility on this issue. *See Santos*, 140 S.W.3d at 405. Rosas offered nothing at the disbarment proceeding to rebut Mallery's testimony about the limited nature of his real estate knowledge and experience. Rosas testified he simply "assumed" Mallery was knowledgeable about their business transaction because Mallery is a real estate salesperson in California. Because the record is devoid of evidence showing the underlying transaction was a "standard commercial transaction[] between the lawyer and the client for

products or services that the client generally markets to others," we must reject Rosas's contention that the transaction is exempted from Disciplinary Rule 1.08(a). Rosas's fifth issue is overruled.

### DISCIPLINARY RULE 8.04(A)(3)

In his second and sixth issues, Rosas challenges the legal sufficiency of the evidence to support the trial court's finding that he violated Rule 8.04(a)(3) of the Texas Disciplinary Rules of Professional Conduct. Disciplinary Rule 8.04(a)(3) provides: "A lawyer shall not . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 8.04(a)(3). This court has held "'dishonesty' is defined as 'lack of honesty, probity, or integrity in principle' and 'lack of . . . straightforwardness.'" *Brown v. Comm'n for Lawyer Discipline*, 980 S.W.2d 675, 682 (Tex. App.—San Antonio 1998, no pet.).

We believe the record supports the trial court's finding that Rosas engaged in conduct involving dishonesty because his actions lacked probity, integrity, and straightforwardness. The record shows Mallery hired Rosas in response to a solicitation letter he received from Rosas. Mallery testified he hired Rosas because he wanted to "get rid of [his] house," avoid having his property sold at foreclosure, and protect his credit. Although Rosas was aware of Mallery's stated objectives, Rosas took actions inconsistent with them to further his own interests. The trial court heard that after Rosas delayed Mallery's foreclosure, he and Mallery reached an agreement wherein Mallery would transfer ownership of his investment property to Rosas's company (ASGR) in exchange for $5,000. Rosas prepared various legal documents to effectuate the transfer, but failed to explain them to Mallery. Notably, Rosas failed to inform Mallery that Mallery would remain fully responsible for the property's monthly mortgage payment even after Rosas's company took possession of the property. Rosas's lack of candor prevented Mallery

from fully understanding the terms of the transfer and caused him to enter a transaction he otherwise would not have entered.[6] The record evidence is legally sufficient to support the trial court's finding that Rosas violated Disciplinary Rule 8.04(a)(3); therefore, Rosas's second and sixth issues are overruled. *See Acevedo v. Comm'n for Lawyer Discipline*, 131 S.W.3d 99, 106 (Tex. App.—San Antonio 2004, pet. denied) (concluding attorney engaged in dishonesty and misrepresentation in violation of Disciplinary Rule 8.04(a)(3) where the attorney prepared legal documents transferring client's property to the attorney's wife with neither monetary consideration nor assumption of the loan on the property; attorney was aware the client could not read the documents and misrepresented the true purpose of the documents to her).

### DISBARMENT

In his fourth issue, Rosas contends the trial court abused its discretion when it ordered the sanction of disbarment. A trial court has broad discretion to determine the consequences of professional misconduct. *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 659 (Tex. 1994); *Love v. State Bar of Tex.*, 982 S.W.2d 939, 944 (Tex. App.—Houston [1st Dist.] 1998, no pet.). The guiding rules and principles to determine the appropriate sanction for an attorney deemed guilty of professional misconduct are set forth in Texas Rule of Disciplinary Procedure 3.10. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.10. To determine the appropriate sanction, the trial court must consider: (1) the nature and degree of the misconduct for which the attorney is being sanctioned; (2) the seriousness of and circumstances surrounding the professional misconduct; (3) the loss or damage to the client; (4) the damage to the profession; (5) the assurance that those who seek legal services in the future will be insulated from the type of professional misconduct found; (6) the profit to the attorney; (7) the avoidance of repetition; (8) the deterrent effect on

---

[6] According to Mallery, he did not realize the effect of the legal documents prepared by Rosas and would not have signed the documents had Rosas disclosed the fact that he was still "on the hook for the loan and sign[ing] away [his] rights to the property."

others; (9) the maintenance of respect for the legal profession; (10) the conduct of the respondent during the course of the Committee action; (11) the trial of the case; and (12) other relevant evidence concerning the attorney's personal and professional background. *Id.* Sanctions for professional misconduct may include disbarment, resignation in lieu of disbarment, indefinite disability suspension, suspension for a certain term, probation of suspension, interim suspension, public reprimand, and private reprimand. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.06(T).

The judgment of a trial court in a disciplinary proceeding may be so light or heavy as to amount to an abuse of discretion. *Kilpatrick*, 874 S.W.2d at 659; *Love*, 982 S.W.2d at 944. We will reverse the trial court's decision concerning the consequences of professional misconduct only if an abuse of discretion is shown. *Love*, 982 S.W.2d at 944. Generally, a trial court abuses its discretion when it acts in an unreasonable and arbitrary manner or acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1986).

The record shows the trial court considered the relevant factors outlined in Disciplinary Rule 3.10 in assessing Rosas's sanction. The record from Rosas's disbarment hearing shows counsel for the Commission specifically directed the trial court to Rule 3.10 and informed the court that it was required to consider the factors delineated in the rule in assessing Rosas's sanction. Counsel for the Commission proceeded to discuss several of the factors, explaining how they applied to Rosas's misconduct, and then informed the court that Rosas had a prior disciplinary record for professional misconduct.[7] The trial court commented on the applicability

---

[7] Rosas was publically reprimanded for misconduct and also received a twelve-month partially probated suspension in 2000. He was then found guilty of professional misconduct and sanctioned with a partially probated suspension in 2007. The Board of Disciplinary Appeals later revoked the probated portion of Rosas's 2007 suspension and imposed a five-year active suspension in 2008.

of several of Rule 3.10's factors, noting the court's primary concern in this case was "[t]he maintenance of respect for the legal profession." According to the trial judge, she believed the public's respect for the legal profession was "incredibly harmed" by Rosas's misconduct and that this, with the facts and circumstances of the case, justified the sanction of disbarment.

Rosas argues the sanction of disbarment is an abuse of discretion because there is no evidence showing the following: (1) how the public's respect for the legal profession was harmed by his misconduct; (2) the seriousness of his actions; and (3) any damage to his former client. Rosas, however, ignores Mallery's testimony, which goes to each of the factors disputed by Rosas. Mallery testified about how he called Rosas for advice on saving him from foreclosure and that he trusted Rosas because he was an attorney. He stated Rosas's conduct in connection with the house has made him feel like he "h[as] been held hostage by a terrorist for two years now. He moved people into the house and not paid a dime . . . and will not give the house back." Mallery commented to the court that "you're supposed to be able to trust attorneys to do what they say." He further testified his "credit is destroyed" and that he is "still on the hook for the note" as a result of his dealings with Rosas.

Rosas also claims that disbarment is too harsh a sanction because he did not profit from his actions. Even if this factor weighs in favor of Rosas, the record shows the primary concern of the court when assessing the sanction of disbarment was the effect of Rosas's actions on the public's perception of the legal profession. The trial court had broad discretion to balance the evidence and apply it to the factors set forth in Rule 3.10. In light of the evidence presented, we cannot say the record demonstrates the trial court acted in an unreasonable and arbitrary manner or without reference to any guiding principles in imposing the sanction of disbarment. Rosas's fourth issue is overruled. *See Rangel v. State Bar of Tex.*, 898 S.W.2d 1, 3-4 (Tex. App.—San

Antonio 1995, no writ) (holding trial court did not abuse its broad discretion in imposing sanction of disbarment considering the seriousness of conduct at issue, the need to maintain respect for the legal profession, and the need to avoid further repetition of conduct).

## CONCLUSION

Based on the foregoing, the trial court's judgment is affirmed.

Catherine Stone, Chief Justice