



## MEMORANDUM OPINION

No. 04-11-00521-CV

Michael **HOWARD** and Roger Nelson,
Appellants

v.

**RAYCO STEEL, LTD.**,
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-15916
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                 Karen Angelini, Justice
                 Marialyn Barnard, Justice

Delivered and Filed:  October 3, 2012

AFFIRMED

This appeal arises from Rayco Steel, Ltd.'s suit against Mining Service & Supply Company and its corporate officers, Michael Howard and Roger Nelson, for fraud, conspiracy, and fraudulent transfer. Following a bench trial, the court entered judgment awarding damages to Rayco. On appeal, Howard and Nelson generally challenge the sufficiency of the evidence to support their liability. Their appellate complaints specifically concern the Texas Uniform Fraudulent Transfer Act (the "Act"), the trial court's failure to identify a specific instance of

fraud, conspiracy, or fraudulent transfer, and the application of the res judicata and trust fund doctrines. We overrule appellants' issues and affirm the trial court's judgment.

## BACKGROUND

In March of 2001, Rayco sent a demand letter to Mining Service & Supply Company ("MINSCO"), asserting a claim for breach of contract. An arbitrator ruled in favor of Rayco, and the arbitrator's ruling was incorporated into a judgment dated May 15, 2007, awarding Rayco approximately $360,000 in damages, attorney's fees, and pre-judgment interest.

During post-judgment discovery, Rayco discovered that MINSCO's corporate charter had been forfeited and its remaining assets had been sold. Rayco also discovered various other transfers of funds had been made after Rayco made its claim against MINSCO. Rayco sued MINSCO and three of its principals: (1) John Bates - director/President/41% shareholder; (2) Michael Howard – director/Vice-President/41% shareholder; and (3) Roger Nelson – director/Treasurer-Secretary/18% shareholder. A default judgment was taken against Bates, and Rayco's claims against him were severed into another cause. Rayco proceeded to trial against MINSCO, Howard, and Nelson, and the trial court awarded a judgment in favor of Rayco. Howard and Nelson filed the instant appeal.

## STANDARD OF REVIEW

We review challenges to the legal sufficiency of the evidence in a bench trial under the same standard used in reviewing the sufficiency of the evidence in a jury trial. *Rosas v. Comm'n for Lawyers Discipline*, 335 S.W.3d 311, 316 (Tex. App.—San Antonio 2010, no pet.). When reviewing a legal sufficiency or "no evidence" challenge, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Rosas*, 335 S.W.3d at 316. If the appellant

is challenging the legal sufficiency of the evidence to support a finding on which he did not have the burden of proof at trial, the appellant must demonstrate on appeal that no evidence exists to support the adverse finding. *Rosas*, 335 S.W.3d at 116. We sustain a legal sufficiency or "no evidence" challenge when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id*. In any sufficiency review, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *City of Keller*, 168 S.W.3d at 819; *Rosas*, 335 S.W.3d at 316.

### LEGAL SUFFICIENCY CHALLENGES

Howard and Nelson challenge the legal sufficiency of the evidence to support the trial court's liability findings as to violations of the Act, fraud, conspiracy, violation of the trust fund doctrine, and alter ego/piercing the corporate veil. Because each of these theories independently supports liability, we need only address the sufficiency of the evidence to support liability under any one of these theories. *See ACCI Forwarding, Inc. v. Gonzalez Warehouse P'ship*, 341 S.W.3d 58, 68 (Tex. App.—San Antonio 2011, no pet.); *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 634 (Tex. App.—Waco 2000, pet. denied).

#### The Texas Uniform Fraudulent Transfer Act

"The purpose of [the Act] is to prevent debtors from defrauding creditors by placing assets beyond their reach." *Corpus v. Arriaga*, 294 S.W.3d 629, 634 (Tex. App.—Houston [1st Dist.] 2009, no pet.). With regard to a creditor whose claim arose before the transfer was made, a transfer is fraudulent under section 24.006(a) of the Act if: (1) the debtor did not receive a

reasonably equivalent value in exchange for the transfer; and (2) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer. TEX. BUS. & COM. CODE ANN. § 24.006(a) (West 2009). Additionally, with regard to a creditor whose claim arose before the transfer was made, a transfer is fraudulent under section 24.005(a) of the Act if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor. *Id*. at § 24.005(a).

Section 24.005(b) of the Act lists several factors or "badges" the trier of fact may consider in determining whether actual intent to defraud exists, including: (1) the transfer was made to an insider; (2) before the transfer was made, the debtor had been sued or threatened with suit; and (3) the debtor was insolvent. *Id*. at § 24.005(b). The trier of fact may make inferences regarding the fairness or fraudulent character of a transaction based on the facts and circumstances of a particular case, including the existence of any "badges of fraud." *Flores v. Robinson Roofing & Constr. Co.*, 161 S.W.3d 750, 755 (Tex. App.—Fort Worth 2005, pet. denied) (citing *Coleman Cattle Co. v. Carpentier*, 10 S.W.3d 430, 434 (Tex. App.—Beaumont 2000, no pet.)). "'Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony.'" *Flores*, 161 S.W.3d at 754 (quoting *Coleman Cattle Co.*, 10 S.W.3d at 433).

"Conspiracy is a derivative tort requiring an unlawful means or purpose, which may include an underlying tort." *Chu v. Hong*, 249 S.W.3d 441, 444 (Tex. 2008). Under this theory, Rayco was required to show that Howard and Nelson participated in a conspiracy to commit a fraudulent transfer. *See id*.

***Did Howard and Nelson Violate the Act?***

With regard to these liability theories, the trial court found that Rayco's claim arose on March 11, 2002, when the lawsuit was filed against MINSCO and others for breach of contract, and that Howard, Nelson, and MINSCO were all aware of Rayco's claim. *See* TEX. BUS. & COM. CODE ANN. § 24.002(3) (West 2009) (defining claim as "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"). In support of this finding, the evidence established that both Howard and Nelson, who were officers of MINSCO, knew about the lawsuit and Rayco's claim.

The trial court also found that Howard and Nelson knew on or before November 20, 2004 that MINSCO's liabilities far exceeded its assets, *i.e.*, that MINSCO was insolvent. *See id.* at § 24.003(a) (debtor is insolvent if sum of debts is greater than all of the debtor's assets at a fair evaluation). This finding is supported by the affidavits of both Howard and Nelson acknowledging that MINSCO's liabilities far exceeded its assets in 2004.

The trial court further found that Howard and Nelson were insiders as defined by the Act. *See id.* at § 24.002(7)(B) (listing directors and officers as insiders if debtor is a corporation). This finding is supported by evidence that Howard and Nelson were officers and directors of MINSCO.

The trial court further found that the bank statements contained "questionable checking account transactions from January 2004 to November 2006, totaling $1,370,872.91, including unexplained wire transfers [and] payments to shareholders," and that Howard and Nelson made "undocumented and unsubstantiated transfers" from the checking account totaling $1,370,872.91. The bank statements and a summary of the questionable checking account

transactions from those statements, including payments personally made to Bates, Nelson, and Howard, were introduced into evidence in support of this finding. Nelson, who was the treasurer of MINSCO, admitted that he could produce no invoices, bills, or receipts to support the validity of these payments or to document the basis for any expenses. Although Nelson testified that Bates had the documentation to support the expenses paid in relation to the business conducted by MINSCO in Jamaica, Nelson admitted that he did not attempt to contact the primary subcontractor in Jamaica in an effort to obtain any documentation because the subcontractor is illiterate and Nelson did not have a telephone number for him. Nelson also admitted that the records kept by a business should substantiate expenses. Although Nelson and Howard testified that the expenses were validly documented at the time they were paid, the trial court, as the sole judge of the credibility of the witnesses, could have chosen to disbelieve them. Nelson and Howard complain in their brief that the trial court "labeled not one single transaction as fraudulent" with regard to these checking account transactions; however, the trial court's findings that the transactions were "questionable," "unexplained," "unsubstantiated," and included "payments to shareholders" are circumstances from which the trial court could infer that the transactions were fraudulent as a group.

Finally, the trial court found that Howard and Nelson knowingly participated in the fraudulent acts resulting in the fraudulent transfers and concluded that they "acted in agreement and in concert with specific intent to defraud [Rayco] by fraudulently transferring MINSCO's assets." Initially, we note that Howard and Nelson did not separately challenge the trial court's conspiracy findings in their brief. However, in support of those findings, we note Howard testified that although Nelson was primarily responsible for the financial records, Howard also had financial obligations and signed checks. Howard further testified that he "knew about

literally every one" of the questionable checking account transactions listed in the exhibit presented to the trial court and "had no objections at all." Nelson also testified that both he and Howard were among the people who were signatories on MINSCO's checking account and wrote checks on that account. Therefore, from the evidence presented, the trial court could infer Howard and Nelson continually acted in agreement and in concert as to all actions taken in regard to MINSCO's assets.[1]

Having determined the evidence is legally sufficient to support at least one liability theory on which the trial court's judgment could be based, we decline to evaluate the sufficiency of the evidence in support of the other liability theories because such an evaluation is not necessary to the final disposition of this appeal. *See ACCI Forwarding, Inc.*, 341 S.W.3d at 68; *Checker Bag Co.*, 27 S.W.3d at 634; *see also* TEX. R. APP. P. 47.1.

### RES JUDICATA

In the third issue in their brief, Howard and Nelson contend that Rayco's attempt to pierce MINSCO's corporate veil was barred by res judicata. The doctrine of res judicata does not apply to efforts to enforce a judgment such as was undertaken in the instant case. *See Matthews Const. Co. v. Rosen*, 796 S.W.2d 694, 694 (Tex. 1990); *Walker v. Anderson*, 232 S.W.3d 899, 912 (Tex. App.—Dallas 2007, no pet). Moreover, the trial court was not required to rely on piercing the corporate veil as a basis for imposing liability on Howard and Nelson in this case.

---

[1] The evidence at trial also established that both Howard and Nelson were sanctioned for failing to respond to post-judgment discovery regarding MINSCO's assets.

## CONCLUSION

The evidence is legally sufficient to support the imposition of liability on Howard and Nelson on at least one of the liability theories presented at trial. Accordingly, the trial court's judgment is affirmed.

Catherine Stone, Chief Justice