

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00887-CV

Aurora A. **RODRIGUEZ**, Israel Rodriguez, Edelmiro Romeo Alvarez, Silverio Simon Alvarez,
Anita Irma Guerra, Emilio Roman Alvarez, Adrian Alvarez, Teodoro Alvarez, Jr.,
and Primitivo Alvarez,
Appellants

v.

Ventura **HERNANDEZ**,
Appellee

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. DC-11-423
Honorable Jose Luis Garza, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Karen Angelini, Justice
        Sandee Bryan Marion, Justice
        Marialyn Barnard, Justice

Delivered and Filed:  November 26, 2014

AFFIRMED

Aurora A. Rodriguez, Israel Rodriguez, Edelmiro Romeo Alvarez, Silverio Simon Alvarez,

Anita Irma Guerra, Emilio Roman Alvarez, Adrian Alvarez, Teodoro Alvarez, Jr., and Primitivo

Alvarez (the "Alvarezes") appeal the trial court's judgment declaring the boundaries of a tract of

real property owned by Ventura Hernandez.  The western boundary of Hernandez's property abuts

property owned by the Alvarezes.  The judgment was entered after a bench trial, and the Alvarezes

challenge the sufficiency of the evidence to support the trial court's findings.  Holding that the

evidence is sufficient to support the trial court's finding that Hernandez's boundaries are those contained in a metes and bounds description developed and confirmed by licensed surveyors, we affirm the trial court's judgment.

## BACKGROUND

In 1925, Isabel Cruz de la Cruz conveyed a 6.64 acre tract of land to her nine children. In 1950, the children verbally partitioned the property among themselves; however, the deed records contain no details regarding the nature of the partition.

Hernandez's mother, who was one of Isabel's children, subsequently conveyed her share in the land to Hernandez. The Alvarezes' father, Teodoro, was conveyed two shares in the land through a series of conveyances which began with conveyances by two of Isabel's other children. Teodoro later conveyed his shares to his children who are the appellants in this appeal. The deed to Hernandez references his share of land as containing .737 acres, while the deeds to the Alvarezes reference each of their shares of land as containing .83 acres. Conflicting evidence was presented as to whether one of Isabel's children was conveyed a separate tract of land so that the conveyance of the 6.64 acre tract would only have been to her other eight children.[1]

At varying times, two partial fences existed between the properties owned by Hernandez and the Alvarezes. It is undisputed that no survey was undertaken prior to the placement of those fences to determine the boundary line between the properties, and it also is undisputed that the fence did not run the length of the boundary line.

In 1978, Hernandez hired Elias Aguilar, a licensed surveyor, to determine the boundary lines of his property. At this same time, Elias also surveyed the boundary lines of the owners of four other shares of land to the east of Hernandez's share.[2] Elias prepared a metes and bounds

---

[1] 6.64 acres divided by nine equals .7377 acres, while 6.64 acres divided by eight equals .83 acres.
[2] One owner owned three shares, while the other owner owned one share.

description of Hernandez's boundaries and set rods establishing the corners of those boundaries. The two shares of the land west of the Alvarezes' shares of land also were surveyed, and Elias testified that a fence between those shares and the Alvarezes' shares encroached on the Alvarezes' property.

In 2010, Hernandez again retained Elias's services to reconfirm his boundary lines because the rods on the boundary abutting the Alvarezes' property had been removed. Elias re-confirmed the same metes and bounds description he previously determined and reset the rods. While Elias was present, a discussion ensued between Hernandez and some of the Alvarezes, and Elias testified that the Alvarezes did not challenge his location of the boundary line.

In 2011, Hernandez requested the Alvarezes to remove the partial fence located between their properties because it was encroaching on his property. Hernandez also requested that the Alvarezes remove a trailer bed that was located on his property. Although Hernandez and his son testified that the Alvarezes agreed to remove the partial fence, they failed to do so. Because Hernandez's son wanted to place a mobile home at the back of the property owned by Hernandez, Hernandez's son removed the partial fence to provide sufficient access. The Alvarezes then sued Hernandez for trespass.

As previously noted, the parties proceeded to a bench trial. Prior to trial, the trial court ordered a second survey of the boundaries. Following trial, the trial court found that the boundaries of Hernandez's property were the boundaries determined by Elias and the court-appointed surveyor, Eulalio "Lalo" Aguilar, Jr.[3] The judgment incorporates the surveyors' metes and bounds description of Hernandez's property. The Alvarezes appeal.

---

[3] Lalo is Elias's brother.

## STANDARD OF REVIEW

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Rosas v. Comm'n for Lawyers Discipline*, 335 S.W.3d 311, 316 (Tex. App.—San Antonio 2010, no pet.). We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining whether sufficient evidence exists to support an answer to a jury question. *Rosas*, 335 S.W.3d at 316. As the factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *Rosas*, 335 S.W.3d at 316. The trial court may believe or disbelieve the testimony of a witness, in whole or in part, and it may resolve any inconsistencies in a witness's testimony. *Dwairy v. Lopez*, 243 S.W.3d 710, 713 (Tex. App.—San Antonio 2007, no pet.).

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. In making this determination, we credit evidence favoring the finding if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id*. If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge must fail. *Id*. at 810. In reviewing a factual sufficiency issue, we consider all the evidence supporting and contradicting the finding. *Plas–Tex., Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the judgment only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

## RECORD TITLE TO THE PROPERTY

It is well-settled law that a deed can pass no greater estate than that owned by the grantor. *Cockrell v. Tex. Gulf Sulpher Co.*, 299 S.W.2d 672, 675 (Tex. 1956). In this case, the 1925 deed from Isabel and the partition agreement both support the trial court's implied finding that each of

Isabel's children received an undivided 1/9 interest encompassing .7337 acres. This implied finding defeats the Alvarezes' argument that they owned 1.66 acres, or two shares of .83 acres. Because each of Isabel's children was conveyed only .7377 acres, that amount of acreage was the most each of the children could convey. *See id.*

With regard to the location of Hernandez's boundaries, the plat and metes and bounds descriptions prepared by the surveyors support the trial court's finding regarding the boundaries. The Alvarezes contend that they are not bound by the 1978 metes and bounds description because it was never recorded. Although the failure to record the 1978 metes and bounds description might affect the people who are on notice of the boundaries, the absence of a recording would not change the physical location of the boundaries.

The Alvarezes further assert that the surveys contain inconsistencies. It was within the province of the trial court, as the trier of fact, to resolve any such inconsistencies. *Dwairy*, 243 S.W.3d at 713. Elias explained the manner in which he initially determined the boundary locations of the five shares of property he surveyed in 1978. Elias initially determined the perimeter of the 6.64 acres and then surveyed from east to west. Elias's approach was consistent with the manner in which the owners of those shares had constructed their improvements on those tracts. Because Isabel conveyed a 1/9 share of the land to each of her children, Elias testified that each share contained .737 acres. Elias testified that he set rods to establish all four corners of Hernandez's boundaries, and the evidence is conflicting with regard to who subsequently removed those rods. Regardless, the boundaries could be reconfirmed by using the rods that had not been removed and the called distances in the metes and bounds description.

Lalo, who was appointed by the trial court to conduct another survey, also reconfirmed the metes and bounds description determined by Elias. Although Lalo also prepared a map based on the Alvarezes' contention that they owned 1.66 acres of land, a deed can pass no greater estate

than that owned by the grantor, *see Cockrell*, 299 S.W.2d at 675, and the 1.66 acres is more property than the original grantees had to convey. Accordingly, the trial court, as the trier of fact, was within its province in rejecting any survey or map based on the Alvarezes' contention that they owned 1.66 acres of land.

Having reviewed the record as a whole, we hold the evidence is sufficient to support the trial court's findings regarding the metes and bounds description of Hernandez's property, thereby establishing the boundaries of his property.

## ADVERSE POSSESSION

In their third issue, the Alvarezes contend that they acquired title to the property west of the fence by adverse possession. Hernandez counters that the Alvarezes never pled an adverse possession claim.

"In order to claim title by limitation upon adverse possession, a party must plead it specifically." *Smith v. Brooks*, 825 S.W.2d 208, 210 (Tex. App.—Texarkana 1992, no pet.); TEX. R. CIV. P. 94. Assuming, without deciding, that the trial court properly granted the Alvarezes' request to amend their pleadings to add a claim requesting the trial court to determine the boundary between the two properties, the amended pleading does not allege ownership by adverse possession.[4] The specific paragraph added by the amended petition reads as follows:

> 8. Establish Boundary
> 8.1    Plaintiffs would further show that the 100 feet [sic] hurricane fence was an established partial boundary between the parties from the 1970s up until it was removed on July 4, 2011. By and through acquiescence of the certain line when it has been disputed constitutes a strong presumption that it is the true line, except against the state or its subdivisions, and when one of the parties, by their own acquiescence, misleads the other to his or her injury, the line acquiesced in becomes established by estoppels [sic]. The Plaintiffs would further have the court maintain the partial boundary and from said 100 [sic] partial boundary run north to

---

[4] The original petition alleged a trespass claim based on the Alvarezes' allegation that they owned 1.66 acres of land by deed. Thus, they alleged outright ownership through conveyance, not ownership by adverse possession.

the established marker that is towards the fence that borders Jesus Maria Alvarez's property.

Rather than allege a claim for adverse possession, the Alvarezes added a claim that the boundary had been established by acquiescence. *See Kirby Lumber Corp. v. Lindsey*, 455 S.W.2d 733, 739 (Tex. 1970) (setting forth elements of claim); *Moore v. Stone*, 255 S.W.3d 284, 291 (Tex. App.—Waco 2008, pet. denied) (same).[5]  Accordingly, because the Alvarezes never pled adverse possession, the trial court did not err in refusing to award title to them based on that ownership theory.  The Alvarezes' third issue is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Sandee Bryan Marion, Justice

---

[5] The Alvarezes do not raise any issues regarding the boundary by acquiescence theory; however, we note "When the true location of the line is conclusively proven, mere acquiescence is another line in the mistaken belief that it is the true line will not support a finding that such other line is the true line." *Kirby Lumber Corp.*, 455 S.W.2d at 739.