

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00368-CV

**TEXAS REAL ESTATE COMMISSION**,
Appellant

v.

Shahin **ASGARI** and Ahmad Borghei,
Appellees

From the County Court at Law No. 3, Bexar County, Texas
Trial Court No. 343425
Honorable David J. Rodriguez, Judge Presiding

Opinion by:  Catherine Stone, Chief Justice

Sitting:  Catherine Stone, Chief Justice
  Sandee Bryan Marion, Justice
  Rebeca C. Martinez, Justice

Delivered and Filed:  April 10, 2013

AFFIRMED

The Texas Real Estate Commission (the Commission) appeals the trial court's order directing payment of a judgment from the Real Estate Recovery Trust Account (the Trust Account) to Shahin Asgari and Ahmad Borghei. Specifically, the Commission alleges there is no evidence to support the trial court's findings of misrepresentation, dishonesty, or fraud by real estate broker Saied Nekoueian, which is required to sustain the order of payment from the Trust Account. We affirm the trial court's order.

BACKGROUND

Since 2004, Nekoueian has held a license from the Commission. In February of 2006, Nekoueian purchased a piece of commercial property at a foreclosure sale (the "Nacogdoches lot"). In November of 2006, Nekoueian, Asgari, and Borghei jointly purchased and refurbished a residential property (the "Leyland property"). In August of 2007, the Leyland property was sold for a profit, and Nekoueian, Asgari, and Borghei agreed to split the monthly payments from the note.

In January of 2008, Nekoueian traded his interest in the Nacogdoches lot for Asgari and Borghei's interests in the note on the Leyland property plus an additional $9,000 cash paid by Borghei to Nekoueian. Knowing that Asgari desired to use the Nacogdoches lot as a used car sales lot, Nekoueian informed Asgari and Borghei that the property would have to be rezoned. In 2006, Nekoueian had a survey done on the Nacogdoches lot and the section for plat information was left blank on the survey. This survey, however, was not turned over to Asgari and Borghei until four months after the transfer. Shortly after the transfer, Asgari and Borghei submitted an application for rezoning to the City of San Antonio, and they were informed that the property could not be rezoned because it was not platted and was situated in a floodplain. In order for the property to be platted and removed from flood plain status to qualify for rezoning, Asgari and Borghei would be required to invest an additional $60,000 in the lot.

Subsequently, Asgari and Borghei filed suit against Nekoueian alleging various causes of action, including violations of the Texas Deceptive Trade Practices Act (DTPA), based on Nekoueian's false, misleading, or deceptive conduct. After evidence and testimony were presented, the trial court rendered judgment in favor of Asgari and Borghei. The trial court's judgment did not specify the basis on which liability was found. Because Asgari and Borghei were unable to recover from Nekoueian, they filed a request for payment from the Trust Account

with the Commission. The Commission denied payment, claiming the trial court did not base the judgment on a finding of misrepresentation, dishonesty, or fraud. A hearing was held, during which the Commission explained the Trust Account would be responsible for paying Asgari and Borghei only if the trial court's judgment was based on a finding of fraud, misrepresentation, or dishonesty. Both parties then asked the trial court to clarify the basis of the judgment. Following the hearing, the trial court issued findings of fact and conclusions of law, specifically finding that Nekoueian engaged in misrepresentations, fraud, or dishonesty, and the trial court signed an order mandating payment from the Trust Account up to the statutory cap.

## STANDARD OF REVIEW

When the sufficiency of the evidence is challenged, we review a trial court's findings of fact under the same standard that is applied when reviewing a jury's findings. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Rosas v. Comm'n for Lawyer Discipline*, 335 S.W.3d 311, 316 (Tex. App.—San Antonio 2010, no pet.). The trial court is the sole judge of the credibility of and the weight to be given to the witnesses' testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *Rosas*, 335 S.W.3d at 316. We review the evidence in the light most favorable to the verdict and assume the fact finder "credited testimony favorable to the verdict and disbelieved testimony contrary to it." *City of Keller*, 168 S.W.3d at 819. In contrast, we review a trial court's legal conclusions de novo. *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 667–68 (Tex. App.—San Antonio 2008, no pet.) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)).

In order to prevail in a no-evidence challenge, the record must reveal: (a) an absence of evidence of an essential fact; (b) that rules of law or of evidence prohibit the court from crediting the only evidence supporting a vital fact; (c) there is no more than a mere scintilla of evidence to prove a crucial fact; or (d) the evidence conclusively establishes the opposite of a critical fact.

*City of Keller*, 168 S.W.3d at 810; *Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010). Reviewing courts must credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *City of Keller*, 168 S.W.3d at 827; *Rosas*, 335 S.W.3d at 316.

### THE REAL ESTATE RECOVERY TRUST ACCOUNT

The statute allowing recovery under the Real Estate Recovery Trust Account is found in Chapter 1101 of the Occupations Code. *See generally* TEX. OCC. CODE ANN. ch. 1101, subch. M & N (West 2012). In construing these statutory provisions, we must seek to ascertain the legislature's intent by looking at the statute "as a whole, and not its isolated provisions, keeping in mind at all times 'the old law, the evil, and the remedy.'" *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) (quoting *Woods v. Littleton*, 554 S.W.2d 662, 665 (Tex. 1977)). The statute states that the Trust Account is maintained "to reimburse aggrieved persons who suffer actual damages" at the hands of a license holder. TEX. OCC. CODE ANN. 1101.601(a) (West 2012). Indeed, Texas appellate courts agree "[t]he purpose of the Account is to 'guarantee the fidelity and honesty of the real estate salesman in his dealings with the public and to insure and indemnify any member of the public against damages or injury caused by a violation of the Act.'" *Wilson v. Bloys*, 169 S.W.3d 364, 366 (Tex. App.—Austin 2005, pet. denied) (quoting *State v. Pace*, 640 S.W.2d 432, 433 (Tex. App.—Beaumont 1982), *aff'd*, 650 S.W.2d 64 (Tex. 1983)).

Neither party disputes that Nekoueian is a license holder and subject to the statute's provisions. When a license holder is selling property in his own name instead of as an agent for someone else, a claimant may not recover from the Trust Account unless the license holder engages in the wrongful conduct described in Section 1101.652(a)(3) or (b), or Section 1101.653(1), (2), (3) or (4) of the Occupations Code. TEX. OCC. CODE ANN. § 1101.602 (West

2012). The parties agree Asgari and Borghei's only means of recovery is under Section 1101.652(a)(3), which states that a license holder is prohibited from "engag[ing] in misrepresentation, dishonesty, or fraud when selling, buying, trading, or leasing real property in the name of . . . the license holder." *Id.* § 1101.652(a)(3) (West 2012).

The statute requires the claimant to show "that the judgment is based on facts allowing recovery under this subchapter." *Id.* § 1101.607(1) (West 2012). Further, at the hearing for reimbursement by the Trust Account, "the [C]ommission may relitigate . . . any material and relevant issue that was determined in the action that resulted in the judgment in favor of the aggrieved person." *Id.* § 1101.608(c) (West 2012). This means the claimant must provide evidence sufficient to establish the essential elements of any issue relitigated by the Commission during the hearing. *Id.*; *see also Texas Real Estate Comm'n v. Nagle*, 767 S.W.2d 691, 693 (Tex. 1989).

SUFFICIENCY OF THE EVIDENCE

The Commission contends there is no evidence of misrepresentation, dishonesty, or fraud[1] to support the trial court's order, specifically contesting the following findings of fact:

> (18) Saied Nekoueian engaged in misrepresentation, dishonesty and fraud in selling to Shahin Asgari and Ahmad Borghei the Nacogdoches Lot, property which was held in Saied Nekoueian's name.

> (20) Saied Nekoueian's misrepresentations regarding the worth of and suitability for use of the Nacogdoches Lot were a producing cause of Shahin Asgari's and Ahmad Borghei's actual damages.

> (22) The Judgment was founded upon Saied Nekoueian's deceptive conduct in connection with his conveyance of the Nacogdoches Lot, namely that he represented in violation of Section 17.46 of the Texas Business & Commerce Code that the Nacogdoches Lot had characteristics, uses, benefits, and qualities

---

[1] We note that contrary to statements in the Commission's brief, the trial court did not have to find misrepresentation, dishonesty, *and* fraud, but instead, it was required to find only one of the three. *See* TEX. OCC. CODE ANN. 1101.652(a)(3) (West 2012).

that it did not have and was of a particular standard and quality when in fact it was of another.

Asgari and Borghei essentially assert that Nekoueian made a material misrepresentation that they needed only to rezone the property for it to be suitable as a used car lot, which was false because the property was not platted and was in a floodplain. The Commission argues recovery from the Trust Account is inappropriate because Nekoueian did not misrepresent that the property needed to be rezoned, nor did he make any specific representations regarding the platting or floodplain status of the property. Further, the Commission contends Asgari and Borghei's true complaint is that Nekoueian did not sufficiently investigate the marketability of the property prior to the transaction and that this is not grounds for relief under the Trust Account.

The evidence and inferences viewed in the light most favorable to Asgari and Borghei show the following: (1) Nekoueian represented to Asgari and Borghei that the only obstacle preventing them from using the property as a used car lot was the zoning. (2) Nekoueian knew Asgari was looking for property for his used car business. (3) Nekoueian approached Asgari and Borghei about the exchange and enticed them by telling them the Nacogdoches lot would make a good used car sales lot if rezoned. (4) Asgari testified they relied on Nekoueian's knowledge as a broker and owner of the property for almost two years, and they placed trust in Nekoueian as their former business partner. (5) In order for the lot to be used as a used car lot, the lot would need to be rezoned, platted, and removed from flood plain status, which would cost an additional $60,000.

While it may be true that Nekoueian did not specifically make misrepresentations about whether the property was platted or in a floodplain and that a party cannot be liable for failure to disclose information absent a legal duty to do so, *see Bradford v. Vento*, 48 S.W.3d 749, 755

(Tex. 2001), the trial court's findings were not primarily premised on nondisclosures. Instead, the trial court found that Nekoueian "affirmatively represented to Shahin Asgari that the Nacogdoches Lot needed only to be rezoned to be suitable for [use as a used car sales lot]." Further, the trial court stated: "The [j]udgment was *founded upon* Saied Nekoueian's deceptive conduct in connection with his conveyance of the Nacogdoches Lot, namely that he represented in violation of [the DTPA] that the Nacogdoches Lot had characteristics, *uses*, benefits, and qualities that it did not have and was of a particular standard and quality when in fact it was of another."

Conflicting testimony was presented on whether Nekoueian represented that the property needed merely to be rezoned to be utilized as a car sales lot, so we defer to the trial court's implicit credibility assessment in finding that Nekoueian made that representation. *See City of Keller*, 168 S.W.3d at 819. It is a violation of the DTPA to represent that goods or services have characteristics, uses, or benefits that they do not have or are of a particular standard or quality when they are not. TEX. BUS. & COM. CODE ANN. § 17.46(b)(5) & (7) (West 2011). Because the evidence, summarized above, supports the trial court's findings that Nekoueian misrepresented that the lot needed only to be rezoned to be used as a car sales lot while the lot actually also needed to be platted and removed from flood plain status, Nekoueian represented the lot was of a particular quality when it was not or had characteristics that it did not. Therefore, the trial court's judgment was based on a misrepresentation entitling Asgari and Borghei to recover from the Trust Account.

The Commission argues that Nekoueian cannot be liable for a misrepresentation as to the suitability of the property because he did not have knowledge of the lot's flood plain status or lack of platting and, therefore, did not know the representation was false. In *Miller v. Keyser*,

however, the Texas Supreme Court rejected the argument that an individual cannot be held liable under the DTPA when he does not know the falsity of his representations.

> [A] DTPA claim does not require that the consumer prove the employee acted knowingly or intentionally. The DTPA requires that the consumer show that the misrepresentation was false and that the false misrepresentation was the producing cause of the consumer's damages. A consumer is not required to prove intent to make a misrepresentation to recover under the DTPA.

*Miller v. Keyser*, 90 S.W.3d 712, 716 (Tex. 2002). Moreover, "misrepresentations that may not be actionable under common law fraud may be actionable under the DTPA." *Id.* In light of this authority, the trial court did not err in determining that Asgari and Borghei could recover from the Trust Account based on Nekoueian's misrepresentation under the DTPA. Further, the record evidence shows that a survey of the property, which Nekoueian had in his possession, revealed no plat of the property. From this evidence the trial court could infer that Nekoueian knew that more than rezoning would be required before the property could be used as a car lot.

Additionally, the Commission asserts that Asgari and Borghei were responsible for making reasonable efforts to protect their own interests. However, the case cited by the Commission, *Taft v. Sherman*, 301 S.W.3d 452, 457–58 (Tex. App.—Amarillo 2009, no pet.), is distinguishable from the case at hand because it dealt with "unambiguous statements [in a contract] that directly contradicted the alleged oral promises" the appellant claimed were fraudulent misrepresentations. The court determined that the unambiguous language in the contract was included at the appellant's insistence, displaying the appellant's failure to exercise reasonable care to protect his interests. *See also, e.g.*, *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995) (refusing to hold a seller responsible for alleged misrepresentations when the buyer was a sophisticated real estate purchaser who agreed to purchase the property "as is" and assumed the risk of properly determining the property's value); *Isaacs v. Bishop*, 249 S.W.3d 100, 110 (Tex. App.—Texarkana 2008, pet. denied) (suggesting

the appellee was negligent for failing to read a promissory note, but still upholding rescission based on fraud by the appellant). Contrary to the Commission's argument, the proportional responsibility of the parties to investigate does not negate a finding of misrepresentation. *See Pleasant v. Bradford*, 260 S.W.3d 546, 555 (Tex. App.—Austin 2008, pet. denied) (concluding that "[t]he opportunity to conduct an independent investigation of a representation, without more," does not negate a finding of fraud); *Barber v. Keeling*, 204 S.W. 139, 140 (Tex. Civ. App.—San Antonio 1918, no writ) (holding that the director of a bank, and friend of the appellee, was liable for misrepresentations about the value of stock, despite "evidence tending to show that appellee could, by an investigation, have ascertained the falsity of the representations").

## CONCLUSION

On the record before us, we conclude that the evidence is legally sufficient for a reasonable fact finder to determine that Nekoueian engaged in misrepresentations, fraud, or dishonesty. We overrule the Commission's sole issue and affirm the trial court's order for payment from the Trust Account.

Catherine Stone, Chief Justice